IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIE ELLIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **HARTFORD LIFE AND ACCIDENT INSURANCE CO.** | : | |
| | : | |
| | : | **NO. 08-1606** |

### MEMORANDUM OPINION

**Savage, J.**                                                                                     **January 22, 2009**

Challenging the denial of her claim for disability benefits, Marie Ellis ("Ellis") brought this action, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"),[1] against Hartford Life and Accident Insurance Co. ("Hartford"), the insurer that funded and administered the disability insurance plan provided by her employer.[2]  She asserts that Hartford's termination of her long term disability benefits was arbitrary and capricious.  In determining whether it was, I shall not apply the heightened standard of review or the sliding scale approach enunciated by the Third Circuit in *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000) because it is no longer viable in light of the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008).

The parties have each moved for summary judgment.[3]  Ellis contends that Hartford arrived at its determination that she was capable of performing the duties and responsibilities of her regular occupation using a "sloppy and disorganized" process that

---

[1] 29 U.S.C. § 1132(a)(1)(B).

[2] Ellis had also named her employer General Growth Management Co., Inc. ("General Growth") as a defendant. She later voluntarily dismissed the action against General Growth.

[3] The parties agree that this action can be decided on the cross-motions.

relied on "slanting [the] interpretation of the medical data." She specifically claims Hartford ignored the diagnoses of the specialists involved in her treatment and misrepresented the opinion of her treating physician.

Hartford, on the other hand, maintains that its decision to deny benefits was not arbitrary and capricious, but based on substantial evidence. It did not question the diagnoses or the resultant limitations. It disagreed with Ellis that those limitations prevent her from working at her regular occupation as a secretary.

After a thorough examination of the administrative record and applying a deferential standard of review, I conclude that Hartford did not act arbitrarily and capriciously when it terminated Ellis's disability benefits after it determined that her medical conditions do not prevent her from performing the duties of her occupation. Therefore, judgment will be entered in favor of Hartford.

**Background**

Ellis was employed as a "center secretary" until July 8, 2005. HLI0109.[4] She ceased working due to pain in her neck and shoulder. Her complaints included "decreased strength in her arms, cramping in both hands, painful range of motion in her neck and lumbar spine, low back pain and left leg pain and tingling, muscle spasm in both hips, [and] ulcerative colitis."

Through her employer, Ellis was covered by a disability policy which is both funded and administered by Hartford. Under the policy, Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the policy." HLI0018; HLI0034.

---

[4] All references to the administrative record are by Bates number.

After initially paying disability benefits, Hartford notified Ellis that it was terminating her benefits because her physical limitations did not prevent her from performing her occupation as a secretary.[5] Ellis contends that Hartford's conclusion that she is able to perform all the essential duties of her occupation is based on a flawed review of her records. She alleges that Hartford ignored the opinions of her treating physicians and "cherry picked" the medical record.

## ERISA Standard of Review

The denial of benefits under an ERISA qualified plan is reviewed using a deferential standard. Where the plan administrator has discretion to interpret the plan and to decide whether benefits are payable, the exercise of its fiduciary discretion is judged by an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A court is not free to substitute its judgment for that of the administrator. *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 41 (3d Cir. 1993). Accordingly, in deference to the plan administrator, the decision will not be reversed unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 45.

Prior to the Supreme Court's recent decision in *Glenn*, several circuit courts of appeals, including the Third Circuit, applied a modified arbitrary and capricious standard of review in determining whether a plan administrator abused its discretion in denying benefits, giving less deference to the decision where the administrator served in the dual capacity as evaluator and payor of claims under the plan. *See, e.g.*, *Pinto*, 214 F.3d at 377. Glenn makes clear that there is no heightened arbitrary and capricious standard of

---

[5] According to the policy, a claimant is disabled if she is "prevented from performing one or more of the Essential Duties of [her] Occupation, and as a result [her] Current Monthly Earnings are less than 80% of [her] Indexed Pre-disability Earnings." HLI 0021.

review. Regardless of the existence of a financial conflict, the same deferential standard of review applies. Thus, no longer will a financial conflict instigate a heightened review.

In *Glenn*, while reaffirming that an administrator serving as both the evaluator and the payor of claims has an inherent conflict of interest, the Supreme Court clarified that this conflict does not alter the standard of review from a deferential one to a *de novo* review. *Glenn*, 128 S. Ct. at 2350. Nor does it impose "special burden-of-proof rules or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Id.* at 2351. Instead, the conflict is one of several factors relevant in deciding whether the administrator abused its discretion. *Id.*

Before *Glenn*, some courts applying the sliding scale approach to a review of the denial of benefits used the administrator's inherent conflict as a prism through which to evaluate the reasonableness of the denial determination. Now, it is established that the conflict of interest is only one of a number of factors that must be considered on a case-by-case basis in determining whether the insurer has abused its discretion in denying benefits. Because the conflict does not impose a heavier burden on the insurer to justify its denial decision, the sliding scale can no longer be used as a tool to modify the standard of review. Nevertheless, the sliding scale remains relevant to measure the significance, if any, of the conflict of interest as a factor in determining whether the decision was a reasonable exercise of discretion. For example, the more financially vested the insurer was in the outcome, the more likely its interest could have influenced its assessment of the claim. Therefore, even though it does not alter the scope of review, the sliding scale approach still plays a part in assessing the extent of the influence of the conflict on the process.

The term "heightened standard of review" no longer has a place in the lexicon of

ERISA disability appeals. Speaking in terms of "heightening" the level of scrutiny implies an increased standard of review. However, recognizing that the conflict creates a motive to deny a claim does not raise the level of scrutiny. It becomes a part of the review analysis. Where there is evidence of procedural bias, the conflict factor takes on more significance. It may reinforce a finding of a procedural bias because it supplies a motive for the administrator to engage in a faulty procedure. In other words, the presence of the conflict informs, but does not determine, the procedural inquiry. In sum, the sliding scale approach weighs the conflict. It does not heighten the standard of review.

Procedural bias in the review process is another factor to examine. *Kosiba v. Merck & Co.*, 384 F.3d 58, 67-68 (3d Cir. 2004). Procedural anomalies that call into question the fairness of the process and suggest arbitrariness include: relying on the opinions of non-treating over treating physicians without reason, *Kosiba*, 384 F.3d at 67-68; failing to follow a plan's notification provisions, *Lemaire v. Hartford Life & Acc. Ins. Co.*, No. 02-2533, 2003 WL 21500334, at **4 (3d Cir. June 30, 2003); conducting self-serving paper reviews of medical files, *Lemaire*, 2003 WL 21500334, at **4; relying on favorable parts while discarding unfavorable parts in a medical report, *Pinto*, 214 F.3d at 393-94; denying benefits based on inadequate information and lax investigatory procedures, *Friess v. Reliance Std. Life Ins. Co.*, 122 F. Supp. 2d 566, 574-75 (E.D. Pa. 2000); and, ignoring the recommendations of an insurance company's own employees, *Pinto*, 214 F.3d at 394.

**Analysis**

Hartford paid Ellis benefits during its investigation of her claims. Upon completion of the investigation, Hartford determined that Ellis had limitations but they did not prevent her from performing the tasks of her "sedentary" occupation. Following Ellis's appeal,

Hartford hired Reed Review Service to conduct an evaluation of her medical records. Based on the conclusions of the reviewers and the additional materials submitted by Ellis and her physicians, Hartford stood by its denial. This action followed.

During Hartford's initial investigation of the claim, an in-house examiner[6] reviewed the medical records released by Ellis and exchanged several facsimile messages with Dr. Robertson, who completed both an Attending Physician Statement of Continuing Disability ("Attending Physician Statement") and a Physical Capabilities Evaluation ("Capabilities Evaluation"). In the Attending Physician Statement, Dr. Robertson indicated that Ellis was unable to stand or walk continuously for over an hour; that sitting caused pain in her lower extremities; and that she was unable to lift or carry anything, reach overhead, push, or pull. HLI 0308. She reported that Ellis could both drive and use a keyboard. *Id.* Dr. Robertson opined that these limitations would continue for an indefinite length of time. *Id.* At the same time that Dr. Robertson reported that Ellis was physically limited in numerous activities, she qualified her opinions, cautioning that these represented her "best guess" as a "family doctor" and that a physical therapist was better qualified to opine on her patient's limitations. HLI 0310. It was on the basis of this statement that Hartford initially paid Ellis disability benefits on February 6, 2006, pending further review. *See* HLI 0295.

Following the initial grant of benefits, Hartford undertook a complete review of Ellis's medical records to clarify the character and extent of her limitations. It assembled additional medical records and obtained more information from her treating physicians. The physical requirements of her job were described as "continuously sit up to 7 hours per

---

[6] Amanda Ferrill, the examiner, is a nurse by training and experience. She has associate and bachelor degrees in nursing and worked as a Charge Nurse, Hospice Nurse, Travel Nurse, and Medical Surgical ICU Nurse. HLI 0041.

day, stand and walk each for 1 hour per day with periods of rest. Occasionally lift, carry, push, and pull less than 5 pounds, occasionally stoop and reach at all levels, handle, finger, and feel. [Her] position can be changed every 30 minutes." HLI 0193-94.  After comparing her physical limitations and her job requirements and evaluating the records submitted by her treating physicians, Hartford concluded that Ellis could perform the essential tasks of her occupation. *Id.*

Following an appeal of its decision, Hartford sent its file, along with additional records submitted by Ellis, to Reed Review Service for an evaluation and recommendation. The review was performed by Dr. Marcus Goldman, a board certified psychiatrist, and Dr. Phillip Marion, who is board certified in Physical Medicine and Rehabilitation and Pain Management. HLI 0138, 0141.

Not only did the specialists review the medical records, they spoke with the treating physicians. HLI 0135, 0139.  Neither of Ellis's treating psychiatrists opined that she was precluded from engaging in her own occupation.[7]  HLI 0137.  Dr. Marion reported that though Dr. Robertson indicated that Ellis was not likely to be "capable of performing consistently at any occupation," she "agreed that [Ellis's] functional independence and lack of objective acute clinical findings are inconsistent" with claims of incapacity.  HLI 0139.

On the basis of their review of the medical records, the job description and communications with the treating physicians, the reviewing specialists concluded that Ellis could perform the tasks associated with her occupation.  HLI 0137, 0140-41.  Dr. Marion stated that "the medical evidence supports [Ellis's] ability to work eight hours per day at least at the light duty occupational level." HLI 0140.  He also opined that "Ellis's normal

---

[7] Ellis does not take issue with this conclusion.

neurological examination, gait, ability to drive a motor vehicle and lack of acute pathology is inconsistent with the claim of occupational incapacity." HLI 0140-41. Based on these opinions and a review of Ellis's entire file, Hartford upheld its earlier decision to terminate Ellis's disability benefits. HLI 0123.

Ellis argues that Hartford relied "exclusively" on the opinions of Drs. Marion and Goldman, the physicians hired by it. She alleges that Dr. Marion ignored findings which she claims were consistent with her treating physicians' opinions that she was unable to work. This contention is not supported by the evidence. Only Dr. Robertson, not any other treating doctor, rendered an opinion that Ellis could not do her job. That opinion was qualified. Dr. Marion reported that in his discussion with Dr. Robertson she "agreed the patient's functional independence and lack of objective acute clinical findings are inconsistent with the patient's claim of functional and occupational incapacity." HLI0139. Dr. Robertson's candid assessment of the lack of objective findings and her warning that her opinion was only a "best guess" given that a physical therapist was better qualified to render an opinion as to physical capacities demonstrate that Hartford did not unjustifiably rely on Dr. Marion's conclusions. Nor did Hartford ignore Dr. Robertson's findings. Rather, it considered them in their entirety.

Ellis does not question Hartford's definition of the physical requirements of her job. Nor does she point to any specific evidence that demonstrates she cannot perform the physical tasks required by her occupation. Neither the recitation of her diagnoses nor her critique of Dr. Marion's report addresses the fundamental basis of Hartford's decision to terminate her benefits - the comparison of the physical tasks required by her occupation and the limitations described by Dr. Robertson.

Hartford's description of the physical requirements of Ellis's job and its conclusion that she could perform them within the limitations described by Dr. Robertson were supported by substantial evidence. Based on the job description provided by General Growth, HLI 0304, Hartford determined what physical tasks were required to perform her occupation. It then clarified with Dr. Robertson, working from her earlier evaluations, whether Ellis's conditions would preclude her from performing these tasks. HLI 0212-13. Dr. Robertson indicated that Ellis could perform each task. *See, e.g.*, HLI 0215, 0216. Thus, Hartford relied on the specific limitations set by Ellis's own physician in making its determination whether she could perform the physical tasks of her occupation.

Dr. Marion, a specialist, reached his conclusions after a review of Ellis's records and a conversation with Dr. Robertson, the non-specialist treating physician. HLI 0138-40. Unlike Dr. Robertson who offered her "best guess" as a non-specialist, Dr. Marion is board certified in Physical Medicine and Rehabilitation and Pain Management. HLI 0141. Though Dr. Marion was not Ellis's treating physician, Hartford was not precluded from relying on his opinion. As stated in *Addis v. Limited Long-Term Disability Program*, "if [a] consultant's conflicting opinion is based on reliable evidence, it can support a determination contrary to that of a treating physician, especially if the consultant is a specialist and the treating physician is not." 425 F. Supp. 2d 610, 617 (E.D. Pa. 2006).

Ellis alleges, without explanation or evidence, that her claim was handled in a "sloppy and disorganized manner." It is not sufficient for Ellis to offer a general and unsubstantiated critique of Hartford's handling of the claim. A review of the record reveals no procedural anomaly in the evaluation of the claim that could have affected the decision to deny benefits in this case.

Hartford's determination that Ellis could perform the tasks essential to her occupation was reasonable because it was based on a comparison of her job duties as described by her employer and the limitations outlined by her treating physician. Therefore, Hartford's decision to terminate her benefits was not arbitrary and capricious.

## Conclusion

The record as a whole supports the finding that, as defined in the policy and reasonably interpreted by Hartford, Ellis was not disabled. Hartford's conclusions were not arbitrary and capricious and would not have been under the former heightened standard. Therefore, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIE ELLIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **HARTFORD LIFE AND ACCIDENT INSURANCE CO.** | : | |
| | : | |
| | : | **NO. 08-1606** |

## ORDER

      **AND NOW**, this 22nd day of January, 2009, upon consideration of the cross-motions for summary judgment (Document Nos. 12, 15), it is **ORDERED** as follows:

    1.    The plaintiff's motion for summary judgment is **DENIED**.

    2.    The defendants' motion for summary judgment is **GRANTED**

    3.    **JUDGMENT IS ENTERED** in favor of defendant Hartford Life and Accident Insurance Co. and against plaintiff Marie Ellis.

/s Timothy J. Savage
TIMOTHY J. SAVAGE, J.